IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER DAVID HARMAN,   )<br>                                                            )<br>       Plaintiff,                                      )<br>                                                            )<br>v.                                                        )            CIVIL ACT. NO. 3:21-cv-98-ECM<br>                                                            )                                  (WO)<br>TAURUS INTERNATIONAL            )<br>MANUFACTURING, INC., *et al.*,       )<br>                                                            )<br>       Defendants.                                 ) | |

**MEMORANDUM OPINION and ORDER**

**I.  INTRODUCTION**

Plaintiff Christopher David Harman alleges he was injured by a defect in the Taurus PT 738 TCP Pistol (hereinafter, "PT 738 pistol").  He brings this action against defendants Taurus International Manufacturing, Inc. ("TIMI")—the manufacturer of the PT 738 pistol—and Taurus Holdings, Inc. ("Taurus Holdings")—the one hundred percent stockholder of TIMI.  In his second amended complaint (the operative complaint), Plaintiff asserts five claims under state law:  negligence or wantonness (Count I), failure to disclose/warn (Count II), negligent misrepresentation (Count III), fraudulent suppression/concealment (Count IV), and violation of the Alabama Extended Manufacturers' Liability Doctrine (Count V).

Now pending before the Court is the Defendants' motion to dismiss Counts II, III, and IV of the second amended complaint, as well as all claims against Taurus Holdings, for failure to state a claim. (Doc. 48).  The motion is fully briefed and ripe for

review. After careful consideration, the Court concludes that the Defendants' motion is due to be GRANTED IN PART and DENIED IN PART.

## II.  JURISDICTION AND VENUE

The Court has original subject matter jurisdiction of this matter pursuant to 28 U.S.C. § 1332. Personal jurisdiction and venue are uncontested, and the Court concludes that venue properly lies in the Middle District of Alabama. *See* 28 U.S.C. § 1391.

## III.  LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). At this stage of the proceedings, "the court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor." *Bailey v. Wheeler*, 843 F.3d 473, 478 n.3 (11th Cir. 2016).

The determination of "whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.

Conclusory allegations that are merely "conceivable" and fail to rise "above the speculative level" are insufficient to meet the plausibility standard. *Twombly*, 550 U.S. at 555, 570. This pleading standard "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quotations and citations omitted). Indeed, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (quotations and citations omitted).

## IV.  FACTS[1]

Plaintiff purchased a Taurus PT 738 pistol from a retail store in Opelika, Alabama, in December 2011 and gave it to his wife as a gift.[2] Plaintiff was seriously injured on November 27, 2020, while shooting the PT 738 pistol at a firing range when it blew apart, causing metal pieces to strike him in the face and eye. The pistol was designed, manufactured, assembled, and marketed by TIMI in Florida.

Plaintiff alleges that the PT 738 pistol is defective and unreasonably dangerous because its design and manufacture suffer from a defect which renders the pistol subject to a dangerous weakening or fracturing of the pistol's components. The slide allegedly breaks in half at the ejection port and the pieces of the slide become dangerous projectiles which can strike the shooter or bystanders. Plaintiff further alleges that despite actual

---

[1] This recitation of the facts is based on Plaintiff's second amended complaint. The Court recites only the facts pertinent to resolving the Defendants' motion to dismiss. For purposes of ruling on the motion, the facts alleged in the second amended complaint and reasonable inferences drawn therefrom are set forth in the light most favorable to Plaintiff.

[2] This case has been consolidated for discovery purposes with Plaintiff's wife's class action suit. (*See* Civil Action No. 3:21-cv-697).

3

knowledge of the defect, TIMI never remedied the defect, never issued an effective and complete warning to the public, and never recalled the PT 738 pistol. In fact, prior to placing the PT 738 pistol's product line into the marketplace in 2009, Plaintiff alleges that TIMI knew about the defect and instructed its internal marketing and design teams not to warn the public about it.

Plaintiff alleges that in 2012, Brian Aunkst ("Aunkst"), another consumer, was similarly injured when the slide broke when he fired a PT 738 pistol. According to Plaintiff, TIMI failed to fully investigate what caused the slide to break apart. The Plaintiff asserts that despite knowing of the defect, TIMI has failed to acknowledge the defect in any of their marketing or advertising materials and marketed PT 738 pistols as safe firearms.

Plaintiff filed his original complaint in this Court on February 2, 2021, claiming negligence, wantonness, and strict liability. (Doc. 1). On April 20, 2021, Plaintiff filed his first amended complaint, claiming negligence or wantonness; strict liability; breach of implied warranty of merchantability; negligent failure to disclose, failure to warn, concealment, and misrepresentation; fraudulent concealment and failure to warn; and violations of Alabama Extended Manufacturers' Liability Doctrine. (Doc. 22). In response to this Court's order granting in part and denying in part the Defendants' motion to dismiss or for a more definite statement (doc. 37), Plaintiff filed his second amended complaint ("complaint") (doc. 40), for which the Defendants bring this motion to dismiss (doc. 48).

## V.  DISCUSSION

The Defendants move to dismiss Counts II, III, and IV of the complaint, as well as all claims against Taurus Holdings.  The Court will first address the counts, and then the presence of Taurus Holdings in this case.

**A.     Failure to Disclose or Warn[3]**

Plaintiff claims that the Defendants failed to fairly and adequately warn of the known dangers associated with his PT 738 pistol.  Alabama has adopted Restatement (Second) of Torts § 388 (1965), recognizing a cause of action against a manufacturer for negligent failure to warn of dangers created by the products it makes. *Abney v. Crosman Corp.*, 919 So. 2d 289, 293 (Ala. 2005) (recognizing Alabama adopted § 388 in *Purvis v. PPG Indus., Inc.*, 502 So. 2d 714, 719 (Ala. 1987)).  Under this theory, a manufacturer has a duty to warn if it "knows or has reason to know that [its] chattel is or is likely to be dangerous for the use for which it is supplied." *Id.* (citation omitted) (holding liability for failure to warn is limited to "[o]ne who supplies [chattel] directly or through a third person").  The manufacturer's duty extends "to those whom the supplier should expect to use the product [and] those who are endangered by its probable use.'" *Id.* (quotations and citation omitted); *see also Lowe v. Ford Motor Co.*, 2011 WL 830166, at *3 (M.D. Ga. Mar. 3, 2011) (analyzing Alabama law).

---

[3] Because this matter is before the Court on diversity jurisdiction, the Court applies the law of the State where the incidents giving rise to the causes of action occurred:  Alabama. *See Rodriguez v. Branch Banking & Tr. Co.*, 46 F.4th 1247, 1254 n.7 (11th Cir. 2022).

The Defendants argue that no facts alleged by Plaintiff, taken as true, demonstrate that TIMI knew or had reason to know of the PT 738 pistol's defect at the time it was sold to Plaintiff in December 2011. Plaintiff's claim that they knew of the defect through pre-sale "internal testing," the Defendants contend, is a bald accusation that cannot satisfy the *Iqbal* and *Twombly* standard.

Plaintiff, however, provides facts which support the allegation. Plaintiff alleges TIMI knew about the defect before the PT 738 pistol's "product line entered the marketplace in 2009," yet "instruct[ed its] internal marketing and design teams not to warn the public regarding the Defect." (Doc. 40 at 6). Accepting this allegation as true and construing it in the light most favorable to Plaintiff, the allegation plausibly suggests that TIMI knew of the defect and had a duty to warn Plaintiff of the danger it posed. Plaintiff further alleges that he, an expected and probable user of the PT 738 pistol, received no warning of this danger and was consequentially injured. Therefore, the Court finds he has sufficiently alleged a cause of action against TIMI for failure to warn. *See Abney*, 919 So. 2d at 293–94.

Defendants also argue that no facts can demonstrate that TIMI's alleged failure to warn proximately caused Plaintiff's injuries. They contend that Plaintiff does not put forth any allegation that he read the instruction manual or heeded the warnings provided by TIMI with the PT 738 pistol, or that he would have read or heeded a warning of the defect if one had been given. Under Alabama negligence law, there is no presumption that a warning would have been read and heeded: "A negligent-failure-to-adequately-

6

warn case cannot be submitted to a jury unless there is some evidence that the . . . warning would have been read and heeded and would have kept the accident from occurring." *Gurley v. Am. Honda Motor Co.*, 505 So. 2d 358, 361 (Ala. 1987). Courts have read this evidentiary requirement as a question of "whether the 'allegedly inadequate warning' *was* 'read and heeded,' and if not, whether doing so would have prevented the accident." *Smith v. Coleman Co.*, 2010 WL 447325, at *4 (M.D. Ala. Feb. 4, 2010) (emphasis in original) (quoting *Yarbrough v. Sears, Roebuck and Co.*, 628 So. 2d 478, 482 (Ala. 1993)).

Plaintiff argues that, at this juncture, the complaint satisfactorily pleads causation. He alleges that had he been "properly warned of the Defect, he would not have used the product or, alternatively, would have used it in a different manner," (doc. 40 at 11), which indicates, according to Plaintiff, that he "would have . . . read and heeded" a warning if one had been properly given. *Yarbrough*, 628 So. 2d at 482 (citation omitted). In the one case cited by the Defendants on this matter, *Garrison v. Sturm, Ruger & Co.*, 322 F. Supp. 3d 1217 (N.D. Ala. 2018), the court discussed the need for substantial evidence on a motion for summary judgment, not a motion to dismiss. The *Garrison* decision occurred after discovery produced undisputed evidence that the plaintiff—a second-hand buyer of a defective gun—"neither read nor sought to obtain the instruction manual." *Id.* at 1233.

In contrast, another court analyzing a failure-to-warn claim under Alabama law at the motion-to-dismiss stage found allegations similar to those made by the Plaintiff here

7

sufficient. *See Freeman v. NIBCO, Inc.*, 526 F. Supp. 3d 1112 (N.D. Ala. 2020). The court in *Freeman* concluded that the plaintiffs "sufficiently alleged causation by alleging that they suffered damages that would have been prevented with a warning from [the defendant]." *Freeman*, 526 F. Supp. 3d at 1124.

The Court finds that this case more closely aligns with *Freeman* than *Graham*. Like *Freeman*, this case is before the Court at the motion-to-dismiss state. At this stage, the Court only tests the sufficiency of Plaintiff's pleading of a cause of action for failure to warn. Plaintiff maintains that he "suffered damages that would have been prevented with a warning from" TIMI about the PT 738 pistol's alleged defect. *See id.* Therefore, that allegation, taken as true and in the light most favorable to Plaintiff, sufficiently alleges that an adequate warning "would have been read and heeded and would have kept the accident from occurring." *Gurley*, 505 So. 2d at 361; *see also Freeman*, 526 F. Supp. 3d at 1124 (finding plaintiffs "sufficiently alleged causation by alleging that they suffered damages that would have been prevented with a warning from [the defendant]"). Accordingly, Plaintiff has adequately pled a cause of action against TIMI for failure to warn.

**B.     Negligent Misrepresentation**

Plaintiff maintains that the Defendants negligently misrepresented that the PT 738 pistol was safe for use. Alabama has adopted the Restatement (Second) of Torts § 552 (1977), recognizing a cause of action for negligent misrepresentation "relied upon by third parties, or parties who were not in privity of contract with the person making the

8

misrepresentation." *Fisher v. Comer Plantation, Inc.*, 772 So. 2d 455, 461 (Ala. 2000). A claim for negligent misrepresentation is actionable in Alabama only against "[o]ne who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions." *Id.* (citation omitted) (citing Comment c of § 552).

Plaintiff maintains that Alabama law permits negligent misrepresentation claims against manufacturers like TIMI because customers rely on manufacturers to tell them about their products, regardless of privity of contract between the parties. The Defendants, however, argue that Alabama law does not permit liability for negligent misrepresentation against a manufacturer like TIMI because it was not in privity of contract with Plaintiff, nor was it in the business of supplying information to consumers for guidance in their business transactions.

Under the facts alleged, the Court concludes that Plaintiff fails to state a cause of action for negligent misrepresentation under Alabama law. Plaintiff fails to adequately allege that TIMI, "as an integral part of [its] business," provides "information for the guidance of others in their business transactions." *Fisher*, 772 So. 2d at 462 (citation omitted). Courts have applied § 552 to businesses that provide guidance to buyers as part of their business structure. *See, e.g.*, *Boykin v. Arthur Andersen & Co.*, 639 So. 2d 504, 509–10 (Ala. 1994) (accounting firms), *overruled on other grounds by Altrust Fin. Servs. v. Adams*, 76 So. 3d 228 (Ala. 2011); *Fisher*, 772 So. 2d at 462 (real-estate appraisers); *Bryant Bank v. Talmage Kirkland & Co.*, 155 So. 3d 231, 241 (Ala. 2014) (real-estate

9

appraisers); *Colonial BancGroup Inc. v. PricewaterhouseCoopers LLP*, 2016 WL 9686998, at *4–5 (M.D. Ala. Sept. 9, 2016) (accountants). However, courts have found that product manufacturers, like TIMI, are not subject to liability under § 552 because they do not, as part of their businesses, supply guidance or opinions to those using their products, nor do they have direct business relationships with their buyers. *See, e.g.*, *Mosley v. Wyeth, Inc.*, 719 F. Supp. 2d 1340, 1345–46 (S.D. Ala. 2010) (finding a drug manufacturer not liable for negligent misrepresentation because it did not "make it a part of [its] business or profession to supply information for the guidance of others in their business transactions," nor did it "engage in any business transaction with [Plaintiff]" (citation omitted)); *cf. S. Indep. Bank v. Fred's Inc.*, 2016 WL 11164794, at *5 (M.D. Ala. Sept. 23, 2016) ("Because [defendant] is . . . not within a class of professions that supply information to guide business transactions, as an integral part of its business, [plaintiff] has failed to state a claim based on misrepresentations made to a third party."); *Piazza v. Ebsco Indus., Inc.*, 273 F.3d 1341, 1348 (11th Cir. 2001) (holding that, under Alabama law, § 552 "imposes liability for the breach of a duty, arising from a professional relationship, to exercise reasonable care"); *Tobin v. Auto Club Fam. Ins. Co.*, 2013 WL 12138874, at *2 n.1 (N.D. Ala. Nov. 22, 2013) (finding it unlikely that insurance providers "could be construed as being in [the] business of providing information for the guidance of others" (quotations and citation omitted)).

Plaintiff cites *Grubbs v. Medtronic, Inc.*, 2019 WL 3288263 (N.D. Ala. July 22, 2019), for the proposition that manufacturers of products like pistols may be liable for

negligent misrepresentation because the Alabama Supreme Court "has not limited negligent misrepresentation claims to professionals such as accountants or real estate appraisers." 2019 WL 3288263, at *5 n.4 (citing *Fisher*, 772 So. 2d at 462). *Grubbs* also points out that the Eleventh Circuit has "indicated that a plaintiff may have a basis for a negligent misrepresentation claim against a drug manufacturer if the manufacturer 'knew or should have known of the drug's harmful effects and did not tell the plaintiff.'" *Id.* (alterations adopted) (quoting *Legg v. Wyeth*, 428 F.3d 1317, 1324 (11th Cir. 2005) (applying Alabama law)). Nonetheless, TIMI is distinguishable from the pharmaceutical manufacturers in *Grubbs* and *Legg* because the plaintiffs in those cases alleged the manufacturers made marketing statements "directly to patients" about the manufacturers' products, *id.* at *5, and had representatives answer technical questions from healthcare providers about their products "based on information provided . . . by [the manufacturer]," *Legg*, 428 F.3d at 1321. Plaintiff in this case, however, does not allege TIMI had any direct contact with purchasers of the PT 738 pistol or provided guidance to purchasers or retailers about its products. Alabama law, therefore, does not allow for a negligent misrepresentation claim against TIMI under the facts alleged, and Plaintiff's claim for negligent misrepresentation (COUNT III) is due to be DISMISSED.

**C.     Fraudulent Suppression**

Plaintiff claims that the Defendants fraudulently suppressed the defect to his PT 738 pistol. Under ALA. CODE § 6-5-102, "[s]uppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation to

communicate may arise from the confidential relations of the parties or from the particular circumstances of the case." To succeed on a fraudulent suppression claim in Alabama, a plaintiff must demonstrate: (1) the defendant "had a duty to disclose an existing material fact," (2) the defendant "concealed or suppressed that material fact," (3) the defendant's "suppression induced [the plaintiff] to act or refrain from acting," and (4) the plaintiff "suffered actual damage as a proximate result." *Crestview Mem'l Funeral Home, Inc. v. Gilmer*, 79 So. 3d 585, 590 (Ala. 2011) (citation omitted).

"[M]ere silence as to a material fact does not constitute fraud unless that party is under a duty to disclose that fact." *Id.* (citation omitted). Whether a party has "a duty [to disclose] is a question of law." *State Farm Fire & Cas. Co. v. Owen*, 729 So. 2d 834, 839 (Ala. 1998). The Alabama Supreme Court has held that "a duty to speak depends upon a fiduciary, or other, relationship of the parties, the value of the particular fact, the relative knowledge of the parties, and other circumstances of the case." *Mason v. Chrysler Corp.*, 653 So. 2d 951, 954 (Ala. 1995). When parties have "no confidential relationship" and only "deal with each other at arm's length," there is "no obligation to disclose information" unless the information is requested. *Id.* at 955. Further, a party "can be liable for suppression only if it had knowledge of the material fact it allegedly suppressed." *Owen*, 729 So. 2d at 837.

The Defendants argue that there was only an arm's-length transaction between TIMI and Plaintiff, which did not give rise to a duty to disclose the defect.[4] The Alabama Supreme Court, however, has held that "a legal duty not to . . . suppress a material fact" may exist even when "two parties have had no contractual relationship or other dealings." *Wyeth, Inc. v. Weeks*, 159 So. 3d 649, 676 (Ala. 2014) (citations omitted), *superseded on other grounds by* ALA. CODE § 6-5-530. The court in *Wyeth* held that the "particular facts of each case" determines "[w]hether a duty to disclose exists." *Id.* (citation omitted).

In support of their argument that there was no confidential relationship or special circumstances giving rise to a duty to disclose, the Defendants point to two cases decided at the summary-judgment stage. In those cases, the plaintiffs did not survive motions for summary judgment because they failed to present substantial evidence that such relationships or circumstances existed. *See, e.g.*, *McGowan v. Chrysler Corp.*, 631 So. 2d 842, 847–48 (Ala. 1993); *Mason*, 653 So. 2d at 954–55. At the juncture of this case, however, Plaintiff need only provide a factually plausible allegation that some circumstance gave rise to a duty owed by TIMI to Plaintiff to not suppress alleged knowledge of the PT 738 pistol's defect. Plaintiff's allegation that the "Defendants actively concealed the Defect by instructing their internal marketing and design teams not to warn the public regarding the Defect" adequately alleges a circumstance giving rise to this duty and breach of that duty. (Doc. 40 at 6).

---

[4] The Defendants also argue that Plaintiff's complaint does not adequately allege that TIMI knew of the defect, thus prohibiting a cause of action for fraudulent suppression. But, as the Court found above, Plaintiff does adequately allege that TIMI had knowledge of the dangerous defect before placing the PT 738 pistol into the marketplace in 2009.

13

The Defendants also argue that the Plaintiff fails to sufficiently allege detailed facts about the type of fraud in which TIMI engaged. When fraud is alleged, a plaintiff "must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). This heightened pleading rule "serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." *Brooks v. Blue Cross and Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1370–71 (11th Cir. 1997) (quotations and citation omitted). Rule 9(b) is satisfied if the complaint sets forth the following: (1) "precisely . . . what omissions were made," (2) "the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same," (3) "the content of such statements and the manner in which they misled the plaintiff," and (4) "what the defendants obtained as a consequence of the fraud." *Tello v. Dean Witter Reynolds, Inc.*, 494 F.3d 956, 972 (11th Cir. 2007) (citation omitted)

This Court concludes that Plaintiff's complaint satisfies the pleading requirement for fraudulent suppression. Specifically, Plaintiff alleges that (1) TIMI suppressed the defect by instructing its employees to not warn the public; (2) TIMI instructed its marketing and design teams to suppress the defect prior to placing the PT 738 pistol into the marketplace in 2009; (3) the omission induced Plaintiff to buy the PT 738 pistol thinking it was safe for use; and (4) TIMI received a pecuniary benefit as a consequence

of the sale. *See Tello*, 494 F.3d at 972. Therefore, Plaintiff has adequately pled a cause of action for fraudulent suppression under Alabama law.

**D.     Taurus Holdings' Liability**

Plaintiff asks this Court to pierce the corporate veil of the Defendants and permit his claims to be brought against Taurus Holdings solely for actions taken by TIMI.[5] It is well settled in Alabama that "a corporation is a legal entity existing separately from its shareholders." *Shorter Bros., Inc. v. Vectus 3, Inc.*, 343 So. 3d 508, 514 (Ala. 2021) (citation omitted). Piercing the corporate veil and holding a shareholder liable for a corporation's debts or actions "is not a power that is lightly exercised." *Id.* (citation omitted). Nonetheless, "[i]t may be appropriate when the corporate entity is (1) undercapitalized, (2) formed or operated with a fraudulent purpose, or (3) operated as an instrumentality or alter ego of its shareholders." *Id.* (quotations and citation omitted); *see also Cohen v. Williams*, 318 So. 2d 279, 281 (Ala. 1975) (holding it "has not been hesitant to disregard the corporate form and impose liability on the person controlling the corporation and subverting it to his personal use by the conduct of its business in a manner to make it merely his instrumentality").

Plaintiff advances an alter-ego theory. But "mere domination cannot be enough for piercing the corporate veil." *Shorter Brothers*, 343 So. 3d at 514 (citation omitted); *see also First Health, Inc. v. Blanton*, 585 So. 2d 1331, 1334 (Ala. 1991) ("The mere fact

---

[5] Plaintiff relies on the theory of piercing the corporate veil for all claims against Taurus Holdings—i.e., that Taurus Holdings and TIMI operate as one entity, and so liability for one corporation's actions should be applied collectively to both.

that an individual or another corporation owns all or a majority of the stock of a corporation does not, of itself, destroy the separate corporate entity."). To establish an alter-ego theory, "the dominant party must have complete control and domination of the subservient corporation's finances, policy and business practices so that at the time of the attacked transaction the subservient corporation had no separate mind, will, or existence of its own." *Shorter Brothers*, 343 So. 3d at 514 (alteration adopted) (citation omitted). There must also be the additional "elements of misuse of control and harm or loss resulting from" the domination. *Id.* (citation omitted).

Alabama courts have pierced the corporate veil under an alter-ego theory in the following circumstances:

> [1] where a corporation is set up as a subterfuge, [2] where shareholders do not observe the corporate form, [3] where the legal requirements of corporate law are not complied with, [4] where the corporation maintains no corporate records, [5] where the corporation maintains no corporate bank account, [6] where the corporation has no employees, [7] where corporate and personal funds are intermingled and corporate funds are used for personal purposes, or [8] where an individual drains funds from the corporation.

*Id.* at 514–15 (quotations and citation omitted).

As factual support for his alter ego allegation, Plaintiff claims that TIMI and Taurus Holdings "ignored corporate formalities and" were contractually intertwined such that they were "essentially one entity with regard to the allegations in [the complaint]." (Doc. 40 at 5). Additionally, Plaintiff alleges that "Taurus Holdings directed and controlled the actions of [TIMI]." (*Id.*). Plaintiff contends that, at this stage of the proceedings, the allegations are sufficient to bring a claim because "plaintiffs need

discovery to ascertain how parent and subsidiary companies interact." (Doc. 51 at 11). The Defendants correctly point out that these allegations, without more, are conclusory recitations of the elements of Plaintiff's cause of action.

Plaintiff cites *Claybar v. Huffman*, 54 F. Supp. 3d 1284 (S.D. Ala. 2014), for the proposition that "[a] plaintiff need not definitively prove his claims in the complaint, much less recite each and every fact on which he intends to rely in support of those claims." 54 F. Supp. 3d at 1289. But Plaintiff must provide at least *some* "fact on which he intends to rely in support of [his] claims." *Id.* The court in *Claybar* permitted the case to proceed past the motion-to-dismiss stage because the plaintiff pled "specific facts supporting a reasonable inference that [the defendant] neither observed the legal requirements of corporate law nor maintained corporate records, that corporate and personal funds were intermingled (with corporate funds being used for personal purposes), and that an individual [defendant] has drained funds from the corporation." *Id.* at 1290. Plaintiff here has provided no such factual support for his claims that the Defendants ignored corporate formalities and that Taurus Holdings directed and controlled TIMI's actions. Such assertions are "[t]hreadbare recitals of the elements of [Plaintiff's] cause of action, supported by mere conclusory statements," and are thus insufficient to state this claim. *Iqbal*, 556 U.S. at 678.

Additionally, the Court cannot square Plaintiff's request for "discovery to ascertain how parent and subsidiary companies interact" (doc. 51 at 11) with the particularity requirement of Federal Rule of Civil Procedure 9(b). If a court gives a

17

plaintiff "a ticket to the discovery process without identifying a single claim" based on factual support, then it effectively gives a plaintiff a ticket to "an unlimited fishing expedition." *U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1359 (11th Cir. 2006) (citations omitted); *see also Brannan for Est. of Goodman v. West*, 2018 WL 1440835, at *4 (S.D. Ala. Mar. 22, 2018) ("[F]ederal courts decline to impose the considerable burden and expense of discovery on defendants against whom plaintiffs have no concrete factual allegations but only a desire to embark on a fishing expedition in search of facts that might inform their speculative claims."). The Court declines to do so here.[6]

The Court concludes that Plaintiff fails to allege any factual basis to support its claim that Taurus Holdings controlled TIMI or ignored corporate formalities such that TIMI was its alter ego. Therefore, all claims in the complaint (Counts I, II, III, IV, and V) are due to be DISMISSED to the extent that they pertain to Taurus Holdings.[7]

---

[6] Plaintiff unpersuasively relies on two district court decisions from California for his "ticket to discovery." The first case involved sufficient factual allegations about "specific defendants" making "specific statements, the representations these statements constituted, how the companies are connected, and where and when each defendant made the statement." *Updateme Inc. v. Axel Springer SE*, 2018 WL 1184797, at *5 (N.D. Cal. Mar. 7, 2018). Piercing the corporate veil was not even at issue in the second case. *See Espinosa v. Bluemercury, Inc.*, 2017 WL 1079553 (N.D. Cal. Mar. 22, 2017). The Court finds that these cases do not support Plaintiff's request.

[7] Plaintiff also argues that the Defendants cannot now move to dismiss the second amended complaint against Taurus Holdings for failure to state a claim because they waived that defense by not raising it in the Defendants' motion to dismiss Plaintiff's first amended complaint. Aside from failing to point to any binding legal authority for this argument, this Court is not convinced that the Defendants waived their defense in the first place. In their motion to dismiss the first amended complaint, the Defendants objected to Taurus Holdings being in the case altogether because it disputed Plaintiff's alter-ego theory. (*See* Doc. 29 at 3). Based on the improper lumping together of TIMI and Taurus Holdings, the Defendants moved to dismiss the first amended complaint or, alternatively, to ask this Court to order Plaintiff to clarify its pleading because it constituted a shotgun pleading. (Doc. 29 at 1). Without addressing whether Plaintiff's waiver argument even applies in this Circuit, this Court fails see how the Defendants waived a Rule 12(b)(6) defense by asking Plaintiff, after objecting to Taurus Holdings' presence in the case, to clarify what claims he brings against particular defendants. *Cf. Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792

## VI.  CONCLUSION

Accordingly, for the reasons stated, and for good cause, it is

ORDERED that the Defendants' Motion to Dismiss (doc. 48) is GRANTED to the extent that all counts against defendant Taurus Holdings are DISMISSED.  It is further

ORDERED that the Defendants' Motion to Dismiss (doc. 48) is GRANTED with respect to Count III, which is DISMISSED.  It is further

ORDERED that the Defendants' Motion to Dismiss (doc. 48) is DENIED in all other respects.

Done this 15th day of March, 2023.

                            /s/ Emily C. Marks
                            EMILY C. MARKS
                            CHIEF UNITED STATES DISTRICT JUDGE

---

F.3d 1313, 1320 (11th Cir. 2015) (holding the purpose of Rules 8 and 10 of the Federal Rules of Civil Procedure is "to require the pleader to present his claims discretely and succinctly, so that, his adversary can discern what he is claiming and frame a responsive pleading" (citation omitted)).